## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 10 B 45250 |
| | ) | |
| JAMES GEORGE BAUMAN, | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| SHRINERS HOSPITAL FOR CHILDREN, | ) | |
| | ) | Adversary Case No. 11 A 1083 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JAMES GEORGE BAUMAN, | ) | Honorable Jack B. Schmetterer |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

This Adversary Proceeding is related to the Chapter 7 Bankruptcy Case filed by Debtor-Defendant James George Bauman (the "Defendant"). The two-count Amended Complaint filed in this Adversary by Plaintiff Shriners Hospital for Children (the "Plaintiff") seeks a determination barring dischargeability of debt assertedly owed by the Defendant to the Plaintiff pursuant to sections 523(a)(4) and (a)(6) of the Bankruptcy Code, 11 U.S.C. §§ 523(a)(4), (a)(6). The Defendant has now moved to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) Fed. R. Civ. P. [made applicable by Rule 7012(b) Fed. R. Bankr. P.] or, in the alternative, for summary judgment under Rule 56 Fed. R. Civ. P. [made applicable by Rule 7056 Fed. R. Bankr. P.]. The Motion was considered under Summary Judgment standards and procedures. For reasons set forth below, the Motion for Summary Judgment will be granted on both counts of the Amended Complaint.

# I. JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

The proceeding concerns a determination of the dischargeability of a particular debt and is

therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I).  Venue is properly placed in this

court pursuant to 28 U.S.C. § 1409(a).

# II. UNDISPUTED FACTS AND BACKGROUND

All of the material facts in this case either are undisputed or have been deemed admitted

pursuant to Local Bankruptcy Rule 7056-2(B).  Those facts, gleaned from the pleadings and

summary judgment materials, are as follows.

At all times relevant to the Complaint, the Plaintiff was a charitable organization that

provided  hospital and medical care to ill and injured children.  (Def. L.R. 7056-1 Stmt. ¶ 1;

Compl. ¶ 2.)[1]  On December 3, 1964, Grace Ellis ("Ellis") executed a will (the "1964 Will")

designating her elderly parents as the primary beneficiaries of her estate and designating her

descendants and the Plaintiff as contingent beneficiaries.[2]  (Def. L.R. 7056-1 Stmt. ¶ 3 & Ex. 5 to

Ex. F; Compl. ¶ 8.)  She appointed her father, Franklin Ellis, as executor of the will and, if he

was unable or unwilling to act, her mother, Grace S. Ellis, an individual named Edward W.

---

[1] Because all of the facts in the Defendant's statement of material facts are uncontested
or have been deemed admitted, all applicable citations will be made to that statement of facts
rather than to the Plaintiff's response thereto.

[2] At the time of the execution of the 1964 Will, the Plaintiff was known as the "Shriners
Hospitals for Crippled Children."  (*See* Def. L.R. 7056-1 Stmt., Ex. 4A ¶ 1 & Ex. 5 to Ex. F.)

Saunders, and the Continental Illinois National Bank and Trust Company as successor executors. (Def. L.R. 7056-1 Stmt., Ex. 5 to Ex. F.)

Both of Ellis' parents predeceased her. (Compl. ¶ 8.) After the death of her mother in 1991, Ellis moved into the Howard Johnson Hotel in Skokie, Illinois, where she lived until her own death in 2003. (Def. L.R. 7056-1 Stmt., Ex. 4A ¶ 7 & Ex. 4B ¶ 8.) It was at that hotel where Ellis met the Defendant in 1994. (*Id.*, Ex. 4A ¶ 9 & Ex. 4B ¶ 11.) At the time of their meeting, the Defendant was a Lutheran minister and pastor of St. John's Lutheran Church ("St. John's") in Glenview, Illinois. (*Id.*, Ex. 4A ¶ 8.) The Defendant became friends with Ellis, went out to meals with her, drove her to appointments, and provided her with spiritual guidance and counseling. (*Id.*, Ex. 4A ¶¶ 11, 14 & Ex. 4B ¶¶ 21, 22.) In 1997, Ellis became a member of St. John's, where the Defendant was the pastor. (*Id.*, Ex. 4A ¶ 13.) Subsequently, Ellis gave the Defendant power of attorney over both her health care and her property, transferred title to more than $1 million of her assets over to the Defendant, and bought him an automobile and other gifts. (*Id.* ¶ 6.)

On August 9, 1999, Ellis executed a new will (the "1999 Will"), which "revoke[d] all prior wills and codicils." (*Id.* ¶ 3 & Ex. 2 to Ex. F.) The 1999 Will designated the Defendant as the sole primary beneficiary of Ellis' estate and her surviving heirs at law as contingent beneficiaries. (*Id.*; Compl. ¶ 12.) The Defendant was named executor of the new will. (Def. L.R. 7056-1 Stmt., Ex. 2 to Ex. F; Compl. ¶ 12.)

About four years later, on October 8, 2003, Ellis died at the age of 86, leaving no direct descendants. (Def. L.R. 7056-1 Stmt. ¶ 4.) Her estate at that time was worth more than

$2 million. (*Id.*) The 1999 Will was filed the following day with the Clerk of the Circuit Court of Cook County and admitted to probate on October 29, 2003. (*Id.*)

The Plaintiff first became aware of its possible interest in the 1964 Will in 2006 when the Defendant filed that Will with the Circuit Court as part of a will contest brought by some of Ellis' heirs at law. (*Id.* ¶ 5.) Thereafter, on August 8, 2006, the Plaintiff filed a petition to contest the 1999 Will in the Circuit Court. (*Id.* ¶ 6 & Ex. 4A.) Counts I and II of the petition contested the validity of the 1999 Will based on theories of undue influence and mental incapacity, respectively. (*Id.* ¶ 7 & Ex. 4A.) Those counts requested both the vacation of the order admitting the 1999 Will to probate and the admission to probate of the 1964 Will. (*Id.*) Count III of the petition alleged a tort claim for intentional interference with an expectancy of inheritance and requested, *inter alia*, the entry of judgment against the Defendant and more than $2 million in compensatory damages. (*Id.*, Ex. 4A.)

In addition to the Plaintiff's will contest, two groups of Ellis' heirs filed separate will contests that were substantially similar to the Plaintiff's (*Id.* ¶ 11 & Exs. 4B & 4C.), but they have not participated in this Adversary proceeding. During the probate litigation of all three will contests, testimony from Ellis' attending physician, friends, and lawyers was taken in four depositions.[3] (*Id.* ¶ 12 & Exs. D-G.) In all four depositions, the deponents testified that Ellis was of sound mind and memory and did not suffer from diminished mental capacity when the 1999 Will was executed. (*See id.* ¶¶ 13-17.)

---

[3] The Reverend Paul R. Landahl, Bishop of the Metropolitan Chicago Synod, who was familiar with the relationship between Ellis and the Defendant, was also deposed during the probate litigation. (*See* Def. L.R. 7056-1 Stmt., Ex. H.)

In response to the Plaintiff's petition, the Defendant filed a motion to dismiss, asserting

that filing of the petition more than six months after the 1999 Will was admitted to probate was

volatile of section 8-1 of the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2006)).  (Def.

L.R. 7056-1 Stmt. ¶ 8.)  A judge of the Circuit Court granted the Defendant's motion, dismissed

the petition in its entirety with prejudice, and denied the Plaintiff leave to amend.  (*Id.* ¶ 9.)  On

appeal to the Illinois Appellate Court, the Plaintiff challenged dismissal of only the tort claim.

(*Id.*)  The order of dismissal was subsequently affirmed.  (*Id.*)  On October 29, 2009, the Illinois

Supreme Court reversed the judgments of the Appellate and Circuit Courts and remanded the

case to the Circuit Court for further proceedings.  (*Id.* ¶ 10 & Ex. K.)  The sole issue decided by

the Supreme Court was the timeliness of the Plaintiff's tort claim.  *In re Estate of Ellis*, 923

N.E.2d 237, 240 (Ill. 2009).

On October 8, 2010, the Defendant filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code.  (Def. L.R. 7056-1 Stmt. ¶ 2; Compl. ¶ 4.)  About seven months later, on

May 13, 2011, the Plaintiff filed a two-count Complaint in this Adversary proceeding seeking a

determination to bar dischargeability pursuant to sections 523(a)(4) and (a)(6) of the Bankruptcy

Code.  The Plaintiff filed a substantially similar Amended Complaint on August 11, 2011.

About a month later, on September 19, 2011, the Defendant filed the instant Motion.

Additional undisputed facts are set forth in the Discussion below.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56 Fed. R. Civ. P. [applicable under Rule 7056 Fed. R. Bank. P.] "[t]he court

shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*see also Trentadue v. Redmon*, 619 F.3d 648, 652 (7th Cir. 2010).

The summary judgment procedure may avoid unnecessary trials when no genuine issues

of material fact are in dispute. *Vukadinovich v. Bd. of Sch. Trustees of N. Newton Sch. Corp.*,

278 F.3d 693, 699 (7th Cir. 2002); *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990).

Thus, on a motion for summary judgment, the court has "one task and one task only: to decide,

based on the evidence of record, whether there is any material dispute of fact that requires a

trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (internal

quotation omitted). Where the material facts are not in dispute, the sole issue is whether the

moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd.*

*of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

All reasonable inferences drawn from the underlying facts must be viewed in a light most

favorable to the nonmoving party. *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir.

2011); *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 499-500 (7th Cir. 2008). The

existence of a factual dispute is material only if the disputed fact is determinative of the outcome

under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Fritcher v.*

*Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'[S]ummary judgment is not an

appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if

there is a genuine issue for trial.'" *Zamora v. Jacobs (In re Jacobs)*, 448 B.R. 453, 462 (Bankr.

N.D. Ill. 2011) (*quoting Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990)).

The "'party seeking summary judgment always bears the initial responsibility of

informing the . . . court of the basis for [his] motion, and identifying those portions of the

6

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which [he] believes demonstrate the absence of a genuine issue of material

fact.'" *Jacobs*, 448 B.R. at 462 (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the moving party meets his initial burden of production, the opposing party may not rest on

the mere allegations or denials in its pleadings; rather, its response must provide specific facts

showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Matsushita*

*Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Outlaw v. Newkirk*, 259

F.3d 833, 837 (7th Cir. 2001).

When the defendant is the party moving for summary judgment, his burden is to point out

problems [the] plaintiff would face in proving its claims." *Maxwell v. Penn Media (In re*

*marchFirst, Inc.)*, Nos. 01 B 24742, 03 A 1141, 2010 WL 4027723, at *1 (Bankr. N.D. Ill. Oct.

14, 2010) (internal quotation omitted). The plaintiff must then establish a prima facie case,

adducing evidence on every element of its claim on which it will bear the burden of proof at trial.

*Celotex Corp.*, 477 U.S. at 322. Failing that, summary judgment will be entered for the

defendant. *See, e.g., Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692-94 (7th Cir.

2005).

Under our Local Bankruptcy Rule, a motion for summary judgment imposes special

procedural burdens on the parties. *See* L.R. 7056-1, 7056-2. The Rule requires the moving party

to supplement his motion and supporting memorandum with a statement of undisputed material

facts (the "7056-1 Statement"). L.R. 7056-1(A). The 7056-1 Statement must consist of short,

numbered paragraphs and include within each paragraph specific citations to evidentiary material

in support of the facts in that paragraph. L.R. 7056-1(B). "Failure to submit such a statement constitutes grounds for denial of the motion." *Id.*

The party opposing a motion for summary judgment is required by Local Rule 7056-2 to submit a response (the "7056-2 Response") to each numbered paragraph in the movant's 7056-1 Statement and include, "in the case of any disagreement," specific citations to supporting evidence. L.R. 7056-2(A)(2)(a). The opposing party may also file a statement of additional facts, again with references to supporting material. L.R. 7056-2(A)(2)(b). In responding to the 7056-1 Statement, the opposing party may admit facts or deny them: "[t]here are no other options." *marchFirst*, 2010 WL 4027723, at *2. All facts that are not denied are admitted. L.R 7056-2(B). Facts to which the nonmoving party offers a response that is neither a direct admission nor a denial are also admitted, as are facts denied without evidentiary support for the denial. *marchFirst*, 2010 WL 4027723, at *2.

The Defendant in this case has filed a 7056-1 Statement that fully complies with the requirements of the Rule. It contains numbered paragraphs setting out assertedly undisputed facts with specific references to supporting evidentiary material.

In contrast, the Plaintiff has filed a 7056-2 Response that complies only in part with the Rule. In responding to each numbered paragraph in the Defendant's 7056-1 Statement, the Plaintiff categorically admits the facts in fourteen of the twenty-four paragraphs. (*See* Pl. L.R. 7056-2 Resp. ¶¶ 1, 3-11, 16, 18-20.) For each of the remaining paragraphs, the Plaintiff admits some or all of the facts therein. After those admissions, however, the Plaintiff purports to either offer additional facts (*see id.* ¶¶ 2, 12, 14, 23), clarify or explain its response (*see id.* ¶¶ 2, 22, 24), or deny some of the facts in the paragraph (*see id.* ¶¶ 2, 13-15, 17, 21, 23, 24). For none of

8

those additional facts, explanations, or denials does the Plaintiff offer any evidentiary support.

Each of the statements of fact to which the Plaintiff responds in these ways, with the exception of

the statements in paragraph 24, must be deemed admitted under the applicable rules.   L.R. 7056-

2(b); *see also Jacobs*, 448 B.R. at 463; *marchFirst*, 2010 WL 4027723, at *2; *Bank One, NA v.*

*Knopfler (In re Holstein)*, Nos. 00 B 18138, 03 A 00638, 2004 WL 26516, at *1 n.1 (Bankr. N.D.

Ill. Jan. 5, 2004).

Finally, along with its 7056-2 Response, the Plaintiff has also set forth additional facts

that it suggests are uncontested and require the denial of summary judgment under Rule

7056-2(A)(2)(b).   Although the Defendant has failed to respond to these facts, evidentiary

support is offered for only three of the seven (*see* Pl. 7056-2 Resp. Add'l Facts ¶¶ 1, 2, 7), and

none of the facts is material for purposes of the instant matter.   *See Anderson*, 477 U.S. at 248

(finding that a fact is material only if it is outcome-determinative).

### IV.   RES JUDICATA ISSUE

In its paragraph 24 earlier alluded to, the Defendant states therein that, by virtue of the

Illinois Supreme Court's decision in *In re Estate of Ellis*, 923 N.E.2d 237 (Ill. 2009) (the "Illinois

Supreme Court decision"), the "validity of the 1999 will is res judicata as to Plaintiff because

Plaintiff's will contest was dismissed on the merits for having [been] filed out of time." (Def.

L.R. 7056-1 Stmt. ¶ 24.)   The application of res judicata, however, is a legal conclusion, not a

statement of fact. *Muniz v. Moore*, 375 Fed. Appx. 841, 843 (10th Cir. 2010); *Nolles v. State*

*Comm. for the Reorg. of Sch. Dists.*, 524 F.3d 892, 901 (8th Cir. 2008).   Accordingly, the

Defendant's contention as to the applicability of res judicata must be addressed.

The United States Supreme Court has held that res judicata principles apply in the context of bankruptcy. *Crop-Maker Soil Servs., Inc. v. Fairmount State Bank*, 881 F.2d 436, 439 (7th Cir. 1989) (*citing Brown v. Felsen*, 442 U.S. 127, 132 (1979)). Because the Illinois Supreme Court rendered the decision at issue, the court must look to Illinois law to decide whether res judicata bars the litigation of the validity of the 1999 Will. *See Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 163 (Bankr. N.D. Ill. 2009) (*citing Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007)).

Under Illinois law, the doctrine of res judicata, or claim preclusion as it is also known, provides that "a final judgment on the merits issued by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *In re Carl F. Semrau D.D.S., Ltd.*, 356 B.R. 677, 694-95 (Bankr. N.D. Ill. 2006) (*citing River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998)). In order for res judicata to be applied, three requirements must be met: (1) an identity of parties or their privies, (2) an identity of the causes of action, and (3) a final judgment on the merits in an earlier proceeding. *Dollie's Playhouse, Inc. v. Nable Excavating, Inc. (In re Dollie's Playhouse, Inc.)*, 481 F.3d 998, 1001 (7th Cir. 2007); *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001).

Only one of the three requirements is met in the instant case. That is, there is an identity of parties because the Plaintiff and Defendant here were the parties to the state court proceeding. The second element--an identity of the causes of action--however, is not satisfied. Count III in the appeal before the Illinois Supreme Court was a tort claim for intentional interference with an expectancy of inheritance. In contrast, the Amended Complaint in this Adversary Proceeding raises claims under sections 523(a)(4) and (a)(6) of the Bankruptcy Code. Claims under those

sections are certainly not identical to the tort claim raised in the state court proceeding. The third

element--a final judgment on the merits in the earlier action--is also not satisfied. The Illinois

Supreme Court decision spoke solely to the timeliness of the Plaintiff's tort claim--not to its

merits. *Ellis*, 923 N.E.2d at 240 (expressly stating that "[t]he sole issue in this appeal is the

timeliness of [the] tort claim").[4]

It must therefore be concluded here that the doctrine of *res judicata* does not bar litigation

of the validity of the 1999 Will. In any event, the validity of the 1999 Will is not an issue in the

instant Adversary Proceeding.

## V. <u>DISCUSSION</u>

### A. The Time to File a Motion for Summary Judgment

Before addressing the statutory provisions under which the Plaintiff contends that the

debt allegedly owed to it by the Defendant must be excepted from bankruptcy discharge, a

preliminary issue must be considered regarding the time at which a motion for summary

judgment may be filed. The Plaintiff argues that the Defendant's Motion for Summary Judgment

was filed prematurely because discovery was not completed in the probate litigation.

Specifically, the Plaintiff contends that neither the Defendant nor the Ellis heirs, Ellis' care giver,

or members of the Defendant's church have been deposed and that all of them will dispute the

facts presented in the depositions offered by the Defendant. Further, the Plaintiff maintains that

both the Defendant's failure to file an Answer to the Amended Complaint and the Illinois

---

[4] The Illinois Supreme Court did note that "[o]nce the 1999 will was admitted to probate, and the six-month jurisdictional period had passed with no will contest having been filed, the validity of the will was established for all purposes." *Ellis*, 923 N.E.2d at 242. However, the state court's holding focused on whether the Plaintiff's tort claim was time-barred under section 8-1 of Illinois' Probate Act of 1975--not on the merits of the case.

Supreme Court's decision allowing the Plaintiff to proceed with its tort claim for intentional

interference with an expectancy of inheritance create genuine issues of material fact precluding

the entry of summary judgment here in the Defendant's favor.

Those arguments ignore the express language of Rule 56(b) Fed. R. Civ. P., which

governs when a party can move for summary judgment. That Rule provides that "a party may

file a motion for summary judgment *at any time* until 30 days after the close of all discovery."

Fed. R. Civ. P. 56(b) (emphasis added). Moreover, "'[c]ourts and commentators have

acknowledged that no answer need be filed before a defendant's motion for summary judgment

may be entertained.'" *Grochocinski v. Rieger (In re KJK Constr. Co.)*, 414 B.R. 416, 426

(Bankr. N.D. Ill. 2009) (*quoting INVST Fin. Grp, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391,

404 (6th Cir. 1987)); *see also Ross v. Cowan*, No. 03-CV-141-WDS-DGW, 2005 WL 2388269,

at *1 (S.D. Ill. Sept. 28, 2005). In this case, the Defendant filed his Motion for Summary

Judgment on September 19, 2011, before close of discovery in both the probate litigation and this

Adversary Proceeding.

Although discovery is strongly favored before summary judgment is granted, *Bank of*

*Am. v. Outboard Marine Corp. (In re Outboard Marine Corp.)*, 304 B.R. 844, 852 (Bankr. N.D.

Ill. 2004), it must be noted that the Plaintiff has had ample time to conduct discovery but has

failed to do so. When the instant Motion was filed, the Plaintiff had known of its interest in the

1964 Will for over five years and had filed a petition to contest the 1999 Will in Circuit Court.

During pendency of the probate litigation, the Plaintiff failed to depose the Defendant or any

other witnesses who the Plaintiff contends can dispute the facts presented in the depositions

offered by the Defendant. The Plaintiff also failed to examine the Defendant under Rule 2004

Fed. R. Bankr. P. after filing of the related Chapter 7 bankruptcy petition more than a year ago or

to take discovery in this Adversary Proceeding once it was filed.

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up

moment in a lawsuit, when a party must show what evidence it has that would convince a trier of

fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859

(7th Cir. 2005) (internal quotations omitted).  In short, the Plaintiff here has not conducted any

discovery or  produced any evidence here in support of its position.  That the Illinois Supreme

Court allowed the Plaintiff to proceed with its tort claim does not change that fact.  Accordingly,

notwithstanding the Illinois Supreme Court's decision--which spoke to the timeliness of the

Plaintiff's tort claim, not to the merits--it must be held here that the Defendant's Motion for

Summary Judgment was timely filed under Rule 56(b).

Finally, if one possesses evidence to support its suit, it need only present such evidence to

oppose summary judgment by showing a relevant fact issue.  Plaintiff evidentially had no

evidence when it filed this proceeding because it has presented none.

### B.  The Dischargeability of Debt

The Plaintiff has invoked two of the statutory exceptions to discharge under section

523(a) of the Bankruptcy Code.  The discharge provided by the Code aims to effectuate the

"fresh start" goal of bankruptcy relief. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th

Cir. 2002).  As the party seeking an exception to the discharge of a debt, the Plaintiff bears the

burden of proof by a preponderance of the evidence.  *See Grogan v. Garner*, 498 U.S. 279, 291

(1991); *Jacobs*, 448 B.R. at 470; *see also Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979

F.2d 521, 524 (7th Cir. 1992).  Exceptions to discharge must be construed strictly against the

13

Plaintiff and liberally in favor of the Defendant. *See In re Morris*, 223 F.3d 548, 552 (7th Cir.

2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998). Section 523(a)

is to be "narrowly construed so as not to undermine the Code's purpose of giving the honest but

unfortunate debtor a fresh start." *Park Nat'l Bank & Trust v. Paul (In re Paul)*, 266 B.R. 686,

693 (Bankr. N.D. Ill. 2001).

### 1. Section 523(a)(4) (Count I)

Section 523(a)(4) of the Code excepts from discharge any debt "for fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The

meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir.

2003); *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 773-74 (Bankr. N.D. Ill. 2010); *Mut.*

*Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 754 (Bankr. N.D. Ill. 2010).

To demonstrate a claim under section 523(a)(4), the Plaintiff must prove that the Defendant

committed: (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3)

larceny. 11 U.S.C. § 523(a)(4). The Plaintiff invokes only the fraud or defalcation prong of the

statutory exception.

In order to prevail under the fraud or defalcation prong, the Plaintiff must establish the

following elements by a preponderance of the evidence: (1) an express trust or fiduciary

relationship that existed between the Plaintiff and the Defendant; and (2) fraud or defalcation

committed by the Defendant in the course of that relationship. *See Follett Higher Educ. Grp.,*

*Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765-66 (7th Cir. 2011); *Kafantaris v. Signore*, Nos.

10 C 7320, 09 B 13534, 09 A 667, 2011 WL 1743416, at *3 (N.D. Ill. May 5, 2011); *Jacobs,* 448

14

B.R. at 477; *see also Grogan*, 498 U.S. at 291 (holding that the standard of proof for exceptions

to discharge under section 523(a) is preponderance of the evidence).

An express trust requires an explicit declaration of trust, a distinct trust *res*, and an

intention to create a trust. *Hanson*, 432 B.R. at 774; *CFC Wireforms, Inc. v. Monroe (In re*

*Monroe)*, 304 B.R. 349, 358 (Bankr. N.D. Ill. 2004). In the Seventh Circuit, a fiduciary

relationship for purposes of section 523(a)(4) may arise either when there is an express trust or

when there is "a difference in knowledge or power between fiduciary and principal which . . .

gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116

(7th Cir. 1994); *Jacobs*, 448 B.R. at 477; *see also Berman*, 629 F.3d at 769-70 (explaining that a

relationship "'in which one party to the relation is incapable of monitoring the other's

performance" satisfies the section 523(a)(4) requirement (internal quotation omitted)). Only

those fiduciary relationships that "'impose[] real duties in advance of the breach'" fall within the

ambit of section 523(a)(4). *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (*quoting*

*Marchiando*, 13 F.3d at 1116); *Hanson*, 432 B.R. at 774 (same); *see also Berman*, 629 F.3d at

769 (noting that "the fiduciary duties must exist *prior* to the debt" for a section 523(a)(4) to apply

(emphasis in original)).

"Fraud" for purposes of the exception requires intentional deceit. *Fairgrieves*, 426 B.R.

at 754. "Defalcation" means "the misappropriation of funds held in trust for another in any

fiduciary capacity, and the failure to properly account for such funds." *Id.*; *see also Berman*, 629

F.3d at 765 n.3 (finding that "defalcation requires something more than negligence or mistake,

but less than fraud"); *Zitt v. Roberts (In re Roberts)*, Nos. 10 B 06420, 10 A 01298, 2011 WL

4102540, at *7 (Bankr. N.D. Ill. Sept. 14, 2011); *Black's Law Dictionary* 479 (9th ed. 2009)

(defining defalcation as a "failure to meet an obligation" or a "nonfraudulent default"). Although

intent to misappropriate is not necessary, defalcation requires at least reckless conduct. *Meyer v.*

*Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994); *ColeMichael Invs., L.L.C. v. Burke*, 436 B.R. 53, 62

(N.D. Ill. 2010).

Count I of the Amended Complaint alleges that an alleged debt should be excepted from

discharge under the fraud or defalcation prong of section 523(a)(4) because, as the executor of

the 1999 Will, the Defendant breached his fiduciary duty to the Plaintiff. Specifically the

Plaintiff suggests that the Defendant and the Plaintiff had a fiduciary relationship because the

Plaintiff was the "rightful heir and sole intended beneficiary of Ellis" (Compl. ¶¶ 21-24) and that

the Defendant breached his fiduciary duty to the Plaintiff by failing to notify the Plaintiff of Ellis'

death and by distributing all of the assets of Ellis' estate to himself.

The uncontested facts neither support the Plaintiff's arguments nor establish any of the

elements required under the fraud or defalcation prong of section 523(a)(4). First and foremost,

there is no evidence of an express trust or a fiduciary relationship between the parties as required

under the statutory exception. Instead, the undisputed facts demonstrate that the Defendant was

not designated either an agent with a power of attorney or the executor of a will under which the

Plaintiff was named a principal or a beneficiary, respectively.

Rather, the power of attorney for property executed by Ellis named the Defendant as her

agent to act on her behalf with respect to property transactions. (*See* Def. L.R. 7056-1 Stmt., Ex.

1 to Ex. F.) Thus, any express trust or fiduciary relationship created by the power of attorney

was between Ellis and the Defendant, not the Plaintiff and the Defendant.

16

Likewise, neither of the wills designated both the Defendant as executor and the Plaintiff as beneficiary.  Although the 1964 Will named the Plaintiff as a contingent beneficiary, Ellis appointed her father as executor of that will.  (*Id.* ¶ 3 & Ex. 5 to Ex. F.)  The 1999 Will designated the Defendant as executor, but under that will, the Plaintiff was neither a  primary nor a contingent beneficiary.  (*Id.*, Ex. 2 to Ex. F.)  While the Defendant may have had a fiduciary duty under the 1999 Will to Ellis' estate, its heirs, and its beneficiaries after her death, *see, e.g., Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 656 (Bankr. N.D. Ill. 1998), the Plaintiff was not one of those heirs or beneficiaries.  Accordingly, there is neither an express trust nor a relationship--fiduciary or otherwise--between the Plaintiff and the Defendant under any of the documents in this case.

Second, even if there were an express trust or a fiduciary relationship between the parties, there is simply no evidence presented, direct or circumstantial, that the Defendant committed fraud or defalcation.  The undisputed facts altogether fail to establish that the Defendant did not meet his obligations as either agent under the power of attorney or executor under the 1999 Will.  The Plaintiff has provided no evidence to demonstrate that the Defendant intentionally deceived anyone, that he misappropriated the funds of Ellis' estate, or that he failed to properly account for those funds.

Despite this lack of evidence, the Plaintiff maintains that the Defendant acted fraudulently or otherwise improperly by failing to notify the Plaintiff of Ellis' death and by wrongly distributing the assets of Ellis' estate to himself.   Both of these arguments must be rejected.

Under Illinois law, notice of the admission of a will to probate is required to be given only to heirs and legatees of the deceased.  755 ILCS 5/6-10; *see also McGee v. Vandeventer,*

17

158 N.E. 127, 131 (Ill. 1927); *Gen. Fin. Corp. v. Hansen (In re Estate of Hansen)*, 248 N.E.2d

709, 712 (Ill. App. Ct. 1969). Here, the Plaintiff was neither an heir nor a legatee under the 1999

Will, and it is clear that the Plaintiff was not entitled to notice of Ellis' death or of any

proceedings prior to the filing of its petition to contest the will. In fact, during a probate

proceeding in the Circuit Court, the Plaintiff's attorney expressly admitted that the Plaintiff did

not have a right to notice. (*See* Def. L.R. 7056-1 Stmt., Ex. J at 12:22-13:2 ("I clearly

acknowledge that, merely because the [Plaintiff is] named in a prior will, . . . that does not give . .

. a right to notice. I accept that proposition.").)

As for the Plaintiff's contention that the Defendant wrongly distributed the assets of Ellis'

estate to himself, the Plaintiff alleges that the Defendant became friends with Ellis when she was

in her eighties, in poor health, and mentally frail and vulnerable. (Compl. ¶ 10.) In other words,

the Plaintiff suggests that the Defendant took advantage of Ellis, exercising some form of undue

influence over her so that she would leave all of her assets to him.

Under Illinois law, "undue influence" is "any improper . . . urgency of persuasion

whereby the will of a person is over-powered and he is induced to do or forbear an act which he

would not do or would do if left to act freely." *In re Estate of Hoover*, 615 N.E.2d 736, 740 (Ill.

1993) (internal quotations omitted). "To constitute undue influence, the influence must be of

such a nature as to destroy the testator's freedom concerning the disposition of his estate and

render his will that of another." *Id.* (internal quotations omitted). Whether "influence" is

"undue" depends on the circumstances of each case. *Anderson v. Kubitz (In re Estate of*

*Roeseler)*, 679 N.E.2d 393, 404 (Ill. App. Ct. 1997).

All of the evidence presented here contradicts the Plaintiff's suggestion that the

Defendant persuaded or overpowered Ellis or destroyed her freedom concerning the disposition

of her estate in any way. Rather, the uncontested facts demonstrate that, despite Ellis' advanced

age, she did exactly what she wanted to do with her property, without being influenced by the

Defendant or anyone else. According to the unanimous and uncontradicted deposition testimony

presented here that was taken in the probate litigation from her attending physician, her friends,

and her lawyers, Ellis was of sound mind and memory and did not suffer from diminished mental

capacity at the time of the execution of the 1999 Will.

Specifically, Ellis' friend and one-time lawyer Donald W. Hoag ("Hoag") testified that he

played bridge with Ellis on a regular basis from 1985 until her death in 2003 and that she was

"very, very with it." (Def. L.R. 7056-1 Stmt. ¶ 13 & Ex. D at 53:3-5). Hoag described Ellis as a

"very stubborn[,] . . . very independent" woman with "a very strong personality." (*Id.*, Ex. D at

123:13-17.) According to Hoag, "there was absolutely nothing wrong with [Ellis] physically or

mentally" such that she would not have been able "to make a free choice [regarding] what she

wanted to do with her assets." (*Id.*, Ex. D at 106:18-21.)

Similarly, Ellis' attending physician and friend William Wehrmacher ("Wehrmacher")

testified that Ellis was of "sound and disposing mind and memory" during the many years that he

treated her, including shortly before her death (*id.*, Ex. E at 37:15-38:9), that she was "clear and

oriented" (*id.*, Ex. E at 41:16), "pleasant and cooperative" (*id.*, Ex. E at 45:14-15). Additionally,

Wehrmacher stated that Ellis did not suffer from any kind of condition that would impair her

memory or judgment or affect her ability to understand and make responsible decisions on

19

August 12, 1999, just days after she executed the 1999 Will. (*Id.*, Ex. E at 48:4-18.) In short,

Wehrmacher testified, Ellis "knew precisely what she was doing." (*Id.*, Ex. E at 48:2-3.)

James M. Knox ("Knox"), Ellis' friend and attorney, testified that he drafted both the

1999 Will and the power of attorney for property for Ellis. (*Id.*, Ex. F at 10:2-5; 10:24-11:4.)

According to Knox, Ellis was "a scrappy, smart, tough, independent lady." (*Id.*, Ex. F at 52:13-

14.) She was "no pushover," Knox said, but rather "a powerful, . . . interesting, educated,

sophisticated woman." (*Id.*, Ex. F at 52:14-16.) In order to assure himself that Ellis knew

exactly what she was doing at the time of the execution of the 1999 Will, Knox testified that he

observed the way Ellis looked, had her read the will, and asked her if she understood that she was

leaving everything to the Defendant. (*Id.*, Ex. F at 23:7-20; 56:18-21.) After observing and

speaking to Ellis, Knox said, he was "convinced" that the disposition of her estate to the

Defendant was "consistent" with what Ellis had wanted to do for "several years." (*Id.*, Ex. F at

24:3-7.)

Finally, Janine L. Knox ("Janine Knox"), Knox's wife, office manager, and legal

assistant, testified that she witnessed the execution of the 1999 Will. (*Id.*, Ex. G at 5:23-24;

6:24-7:1; 10:7-9.) According to Janine Knox, Ellis then stated her understanding that the will

would leave her entire estate to the Defendant. (*Id.*, Ex. G at 11:13-16.) Janine Knox also

testified that she believed that Ellis was "of sound mind and memory" on the day the 1999 Will

was executed and had no reason to think that the Defendant had unduly influenced her to execute

the will. (*Id.*, Ex. G at 17:12-20.)

Based on the uncontested facts in the Defendant's 7056-1 Statement, the consistent

testimony of the deponents, and the lack of any evidence whatsoever to suggest otherwise, it

cannot be found that the Defendant unduly influenced Ellis to leave all of her assets to him or

that he committed fraud or defalcation in connection with the relevant events in this case.

Indeed, there is no triable fact issue on this question.

In sum, there is absolutely no evidence to demonstrate either of the required elements to

except the debt from discharge under section 523(a)(4). Accordingly, the Motion for Summary

Judgment on that claim in Count I will be allowed in the Defendant's favor.

### 2. Section 523(a)(6) (Count II)

Section 523(a)(6) provides that a debtor cannot discharge any debt "for willful and

malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C.

§ 523(a)(6). To prevail on a claim under the statutory exception, the Plaintiff must demonstrate

that the Defendant: (1) caused an injury; (2) acted willfully; and (3) acted maliciously. *See Gen.*

*Med., P.C. v. Monke (In re Monke)*, No. 10-CV-2273, 2011 WL 1790403, at *3 (C.D. Ill. May

10, 2011); *Jacobs*, 448 B.R. at 480; *Fairgrieves*, 426 B.R. at 756; *Koplin v. Ginsberg (In re*

*Ginsberg)*, Nos. 08 B 30836, 09 A 188, 2009 WL 4891815, at *5 (Bankr. N.D. Ill. Dec. 16,

2009).

The United States Supreme Court has explained that "[t]he word 'willful' in [section

523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or

intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v.*

*Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). That is to say, "willful" means intent to

cause injury, not merely the commission of an intentional act resulting in injury. *Ginsberg*, 2009

WL 4891815, at *5 (*citing Geiger*); *Rae v. Scarpello (In re Scarpello)*, 272 B.R. 691, 704

(Bankr. N.D. Ill. 2002) (same). Under *Geiger's* exacting standard, the Plaintiff in this case must

prove that the Defendant actually intended to harm it and not simply that the Defendant acted

intentionally and the Plaintiff was thereby harmed. *See Jacobs*, 448 B.R. at 480; *Vozella v.*

*Basel-Johnson (In re Basel-Johnson)*, 366 B.R. 831, 849 (Bankr. N.D. Ill. 2007). In other words,

the facts must demonstrate that the Defendant intended the harmful consequences of his actions.

*See Geiger*, 523 U.S. at 61-62; *see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964

(7th Cir. 2004). Injuries that are recklessly or negligently inflicted do not fall within the scope of

section 523(a)(6). *Geiger*, 523 U.S. at 64.

The United States Supreme Court has not described what evidence of state of mind is

needed to establish the intent to cause injury for purposes of the statutory exception. *Jacobs*, 448

B.R. at 480; *Fairgrieves*, 426 B.R. at 757; *Basel-Johnson*, 366 B.R. at 849; *Scarpello*, 272 B.R.

at 704. However, lower court decisions have generally found that a plaintiff can show the

requisite intent by establishing that the defendant either subjectively intended to injure the

plaintiff or knew that the injury was substantially certain to result from his actions. *Jacobs*, 448

B.R. at 480-81.

As to the malice element required under section 523(a)(6), conduct is "malicious" if it is

undertaken "in conscious disregard of one's duties or without just cause or excuse." *In re*

*Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994) (internal quotation omitted); *Jacobs*, 448 B.R. at

481 (*quoting Thirtyacre*); *Fairgrieves*, 426 B.R. at 757; *Basel-Johnson*, 366 B.R. at 850.

Therefore, to demonstrate malice under section 523(a)(6), the Plaintiff must prove that the

Defendant (1) intentionally committed a wrongful act, which (2) caused injury to the Plaintiff,

and (3) was done without just cause or excuse. *See Basel-Johnson*, 366 B.R. at 850. In order for

this Defendant's conduct to be considered malicious, he need not have acted with ill will or a

22

specific intent to injure the Plaintiff. *See Jacobs*, 448 B.R. at 481; *Basel-Johnson*, 366 B.R. at 850.

Count II of the Amended Complaint alleges that the debt in this case should be excepted from discharge under section 523(a)(6) of the Bankruptcy Code because the Defendant willfully and maliciously caused injury to the Plaintiff by depriving the Plaintiff of the assets of Ellis' estate. (Compl. ¶ 27.)  Specifically, the Plaintiff contends that by "causing" Ellis to transfer property to him and to execute a new will, the Defendant willfully and maliciously interfered with the Plaintiff's expectancy of inheritance under the 1964 Will. (*Id.* ¶¶ 27, 28.)  According to the Plaintiff, but for the Defendant's "actions in causing Ellis to execute a new will and transfer property to the Defendant prior to her death," the Plaintiff would have inherited estate assets valued at more than $2 million and the property that was transferred to the Defendant valued at over $1 million. (*Id.* ¶ 29.)

The undisputed facts fail to support these contentions or to demonstrate any of the elements required to except the debt from discharge under section 523(a)(6).  First, there is no evidence that the Defendant committed any acts--or did anything at all--to "cause" Ellis to transfer her property or execute a new will.  Rather, as discussed above at length, the uncontested facts establish that Ellis was of sound mind and memory until her death in 2003 and that she disposed of her property exactly the way she wanted to, without being influenced, unduly or otherwise, by the Defendant.  Other than baldly stating that the Defendant "caused" Ellis to transfer assets to the Defendant and execute a new will, the Plaintiff has simply offered no evidence to prove that the Defendant acted in any way to cause an injury to the Plaintiff.

Even if the Plaintiff had identified specific acts committed by the Defendant which resulted in injury to the Plaintiff, there has been no evidence offered to show that the Defendant actually intended to harm the Plaintiff, knew that injury was substantially certain to result from his conduct, or intentionally committed a wrongful act without just cause or excuse. Because the Plaintiff has failed to adduce evidence on any of the elements of its claim under section 523(a)(6), summary judgment will be entered for the Defendant on Count II.

### C. Attorney's Fees and Costs

Finally, the Defendant's request for unspecified attorney's fees and costs incurred as a result of the prosecution of this Adversary Proceeding must be addressed. Typically, under the "American Rule" applied in federal litigation, the prevailing litigant is not entitled to collect an attorney's fee from his opponent unless authorized by a federal statute or a valid contract between the parties. *Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261, 267 (7th Cir. 2011); *In re Sheridan*, 105 F.3d 1164, 1166 (7th Cir. 1997). This general rule applies to litigation in bankruptcy courts. *Sheridan*, 105 F.3d at 1166.

In this case, there was neither an enforceable contract between the parties nor an applicable federal statute. The only statutory authorization for an award of attorney's fees in a dischargeability proceeding appears in section 523(d). 11 U.S.C. § 523(d). That subsection, however, provides for the award of costs and fees in favor of a debtor who prevails only in the context of a section 523(a)(2) dischargeability determination. *Id.*; *see also Lexington Health Care Ctr. of Elmhurst, Inc. v. McDade (In re McDade)*, 282 B.R. 650, 662 (Bankr. N.D. Ill. 2002). Because the dischargeability determination here was made pursuant to subsections (a)(4) and (a)(6), section 523(d) is not applicable.

24

Notwithstanding the foregoing, it is noted that the Defendant has filed a separate Motion for Sanctions against Plaintiff's counsel pursuant to Rule 9011 Fed. R. Bankr. P. wherein the Defendant also requests, *inter alia*, an award of attorney's fees and costs. (*See* Adv. Case No. 11-1083, Dkt. No. 65.) The Defendant's request under Rule 9011 will be set for consideration under the standards of that Rule. However, the Defendant's request in the Adversary for such fees as a matter of his right is denied.

## V. CONCLUSION

For the foregoing reasons, the Motion of Debtor-Defendant James George Bauman for summary judgment on the Amended Complaint of Plaintiff Shriners Hospital for Children will be allowed on both counts, and judgment will be entered that the debt asserted in this proceeding to be owed by Debtor-Defendant James George Bauman to Plaintiff Shriners Hospital for Children is dischargeable.

ENTER:

JACK B. SCHMETTERER
United States Bankruptcy Judge

Dated this 23rd day of December 2011.

25