UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| James George Bauman, | ) | No. 10 B 45250 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Shriners Hospital for Children, | ) | No. 11 A 01083 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| James George Bauman, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION DENYING SHRINERS HOSPTIAL'S MOTION TO VACATE SUMMARY JUDGMENT**

I.  **INTRODUCTION**

This adversary proceeding is related to the Chapter 7 Bankruptcy proceeding filed by Debtor-Defendant James George Bauman (the "Defendant"). Plaintiff Shriners Hospital for Children (the "Plaintiff") sued in this Adversary Proceeding asserting that its claim against the Defendant should not be discharged pursuant to sections 11 U.S.C. §§ 523(a)(4) and (a)(6). On December 23, 2011, summary judgment in favor of the Defendant was entered. The Plaintiff has moved to vacate that decision under Rule 59 Fed. R. Civ. P. [made applicable by Rule 9034 Fed. R. Bank. P.]. The Plaintiff's motion was timely filed on January 6, 2012.

1

## JURISDICTION

Jurisdiction lies under 28 U.S.C. §1334(b) and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. §157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §1409(a).

## II. BACKGROUND

All of the material facts in this case either are undisputed or have been deemed admitted pursuant to Local Bankruptcy Rule 7056–2(B). Those facts are as follows.

The Plaintiff is a charitable organization that provides medical care to ill and injured children. (Def. L.R. 7056–1 Stmt. ¶ 1; Compl. ¶ 2.) In 1964, Ms. Grace Ellis ("Ellis") executed a will (the "1964 will") naming her parents as the beneficiaries of her estate, and named the Plaintiff and her future descendants as contingent beneficiaries. (Def. L.R. 7056-1 Stmt. ¶ 3 & Ex. 5 to Ex. F; Comp. ¶ 8). In 1999, Ellis executed a new will (the "1999 will") naming Defendant as the sole beneficiary and her surviving heirs as contingent beneficiaries. (Def. L.R. 7056-1 Stmt.; Compl. ¶ 12.) Ellis died in 2003, with an estate of almost $2 million. (Def. L.R. 7056-1 Stmt. ¶ 4). The 1999 Will was filed the following day with the Clerk of the Circuit Court of Cook County and admitted to probate on October 29, 2003. (Id.)

The Plaintiff first became aware of its possible interest in the 1964 Will in 2006 when the Defendant filed that earlier will with the Circuit Court as part of a will contest brought by some of Ellis' heirs at law. (Id. ¶ 5.) Thereafter, on August 8, 2006, the Plaintiff filed a Petition to contest the 1999 Will in the Circuit Court. (Id. ¶ 6 & Ex. 4A.) Counts I and II of that Petition contested the validity of the 1999 Will based on theories of undue influence and mental incapacity, respectively. (Id. ¶ 7 & Ex. 4A.) Those counts requested both the vacation of the order admitting the 1999 Will to probate and the admission to probate of the 1964 Will. (Id.)

2

Count III of the petition alleged a tort claim for intentional interference with an expectancy of inheritance. (Id.,Ex. 4A.)

In addition to the Plaintiff's will contest, two groups of Ellis' heirs filed separate will contests that were substantially similar to that of the Plaintiff's (Id. ¶ 11 & Exs. 4B & 4C), but they have not participated in this Adversary proceeding. During the probate litigation of all three will contests, testimony from Ellis' attending physician, friends, and lawyers was taken in four depositions.3 (Id. ¶ 12 & Exs. D–G.) In all four depositions, the deponents testified that Ellis was of sound mind and memory and did not suffer from diminished mental capacity when the 1999 Will was executed. (See id. ¶¶ 13–17.)

In response to the Plaintiff's petition, the Defendant moved to have the entire state court Complaint dismissed for untimely filing, and this motion was granted by the Circuit Court. (Def. L.R. 7056-1 Stmt. ¶ 8, 9.) The Plaintiff appealed the tort claim only, and the Illinois Court of Appeals affirmed the judgment of the Circuit Court. (Id.) The Illinois Supreme Court reversed the judgment of the lower courts pertaining to the timeliness of the filing and remanded the issue of the tort claim to the Circuit Court. *In re Estate of Ellis*, 236 Ill.2d 45 (2009).

The Defendant filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and the Plaintiff filed this Adversary Complaint to bar dischargability of its tort claim pursuant to §§523(a)(4) and (a)(6). (Def. L.R. 7056-1 Stmt. ¶ 2; Compl. ¶ 4.) Plaintiff alleged under §523(a)(4) that the Defendant had a fiduciary duty to the Plaintiff because the Defendant was the executor of the 1999 will and the Plaintiff was Ellis' rightful heir and that Defendant breached this duty by failing to alert the Plaintiff of Ellis' death and distributing the assets of her estate to himself. (Compl. ¶¶ 21–24). The Plaintiff further alleged under §523(a)(6) that the

3

Defendant willfully and maliciously caused injury to the Plaintiff by depriving Plaintiff of the assets of Ellis' estate. (Compl. ¶ 27.)

The Defendant moved to dismiss the case under Rule 12(b)(6) Fed. R. Civ. P. [made applicable by Rule 7012(b) Fed. R. Bankr. P.] or, in the alternative, for summary judgment under Rule 56(b) Fed. R. Civ. P. [made applicable by Rule 7056 Fed. R. Bankr. P.]. The Defendant submitted that motion with four depositions referred to earlier. The depositions were of the witnesses in the probate litigation that demonstrated Ellis' sound mental state at the time of filing the 1999 will. (Exs. D-G). According to that unanimous and uncontradicted deposition testimony from her attending physician, her friends, and her lawyers, Ellis was of sound mind and memory and did not suffer from diminished mental capacity at the time of the execution of the 1999 Will.

Specifically, Ellis' friend and one-time lawyer Donald W. Hoag ("Hoag") testified that he played bridge with Ellis on a regular basis from 1985 until her death in 2003 and that she was "very, very with it." (Def. L.R. 7056–1 Stmt. ¶ 13 & Ex. D at 53:3–5). Hoag described Ellis as a "very stubborn [,] ... very independent" woman with "a very strong personality." (Id., Ex. D at 123:13–17.) According to Hoag, "there was absolutely nothing wrong with [Ellis] physically or mentally" such that she would not have been able "to make a free choice [regarding] what she wanted to do with her assets." (Id., Ex. D at 106:18–21.)

Similarly, Ellis' attending physician and friend William Wehrmacher ("Wehrmacher") testified that Ellis was of "sound and disposing mind and memory" during the many years that he treated her, including shortly before her death (id., Ex. E at 37:15–38:9), that she was "clear and oriented" (id., Ex. E at 41:16), "pleasant and cooperative" (id., Ex. E at 45:14–15). Additionally, Wehrmacher stated that Ellis did not suffer from any kind of condition that would impair her

4

memory or judgment or affect her ability to understand and make responsible decisions on August 12, 1999, just days after she executed the 1999 Will. (Id., Ex. E at 48:4–18.) In short, Wehrmacher testified, Ellis "knew precisely what she was doing." (Id., Ex. E at 48:2–3.)

James M. Knox ("Knox"), Ellis' friend and attorney, testified that he drafted both the 1999 Will and the power of attorney for property for Ellis. (Id., Ex. F at 10:2–5; 10:24–11:4.) According to Knox, Ellis was "a scrappy, smart, tough, independent lady." (Id., Ex. F at 52:13–14.) She was "no pushover," Knox said, but rather "a powerful, ... interesting, educated, sophisticated woman." (Id., Ex. F at 52:14–16.) In order to assure himself that Ellis knew exactly what she was doing at the time of the execution of the 1999 Will, Knox testified that he observed the way Ellis looked, had her read the will, and asked her if she understood that she was leaving everything to the Defendant. (Id., Ex. F at 23:7–20; 56:18–21.) After observing and speaking to Ellis, Knox said, he was "convinced" that the disposition of her estate to the Defendant was "consistent" with what Ellis had wanted to do for "several years." (Id., Ex. F at 24:3–7.)

Finally, Janine L. Knox ("Janine Knox"), Knox's wife, office manager, and legal assistant, testified that she witnessed the execution of the 1999 Will. (Id., Ex. G at 5:23–24; 6:24–7:1; 10:7–9.) According to Janine Knox, Ellis then stated her understanding that the will would leave her entire estate to the Defendant. (Id., Ex. G at 11:13–16.) Janine Knox also testified that she believed that Ellis was "of sound mind and memory" on the day the 1999 Will was executed and had no reason to think that the Defendant had unduly influenced her to execute the will. (Id., Ex. G at 17:12–20.)

In its response to the Defendant's Motion for Summary Judgment, the Plaintiff argued that the Motion was filed prematurely because discovery was not completed in the probate litigation. Specifically, the Plaintiff contended witnesses who had not been deposed would

5

dispute the facts presented in the depositions offered by the Defendant. (Mem. In Opposition to the Def. Mot. In Favor of Summary Judgment ¶ 4.) Further, the Plaintiff maintained that both the Defendant's failure to file an Answer to the Amended Complaint and the Illinois Supreme Court's decision allowing the Plaintiff to proceed with its tort claim for intentional interference with an expectancy of inheritance created genuine issues of material fact precluding the entry of summary judgment in the Defendant's favor. (Id.) The Plaintiff did not contend that it had any evidence or affidavits at the time to contradict the evidence presented by the Defendant and it offered none. Therefore, the Motion was allowed and Summary Judgment was entered in favor of Defendant.

As reasoned in the Memorandum Opinion supporting entry of Summary Judgment, a party seeking summary judgment "always bears the initial responsibility of informing the ... court of the basis for [his] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [he] believes demonstrate the absence of a genuine issue of material fact." *In re Jacobs*, 448 B.R. 453, 462 (Bank. N.D. Ill, 2011) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). Once a moving party meets his initial burden of production, the opposing party may not rest on the mere allegations or denials in its pleadings; rather, its response must provide specific facts showing there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Matsuchita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001). When the defendant is the party moving for summary judgment, his burden is to point out the problems the plaintiff would face in proving its claims." *Maxwell v. Penn Media (In re marchFirst, Inc.)* Nos. 01 B 24742, 03 A 1141, 2010 WL 4027723 (Bankr. N.D. Ill. Oct. 14, 2010). The plaintiff must then establish a prima facie case, adducing

6

evidence on every element of its claim on which it will bear the burden of proof at trial. *Celotex Cor.*, 477 U.S. at 322. Failing that, summary judgment will be entered for the defendant. See. E.g., *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692-94 (7th Cir. 2005).

The contention by the Plaintiff in its response that Defendant prematurely moved for summary judgment ignored the express language of Rule 56(b) Fed. R. Civ. P. That Rule provides that "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b). No Answer to the Complaint need be filed before a defendant's motion for summary judgment may be entertained. *Grochocinski v. Rieger (In re KJK Constr. Co.)*, 414 B.R. 416, 426 (Bankr.N.D.Ill.2009). In this case, the Defendant filed his Motion for Summary Judgment on September 19, 2011, before close of discovery in both the probate litigation and this Adversary Proceeding.

Although discovery is strongly favored before summary judgment is granted, *Bank of Am. v. Outboard Marine Corp. (In reOutboard Marine Corp.)*, 304 B.R. 844, 852 (Bankr.N.D.Ill.2004), the Plaintiff had ample time to conduct such discovery but failed to do so. When the Summary Judgment Motion was filed, the Plaintiff had known of its interest in the 1964 Will for over five years and had filed a petition to contest the 1999 Will in Circuit Court. During pendency of the probate litigation, the Plaintiff failed to depose the Defendant or any other witnesses who the Plaintiff contended could dispute the facts presented in the depositions offered by the Defendant. The Plaintiff also failed to examine the Defendant under Rule 2004 Fed. R. Bankr.P. after filing the related Chapter 7 bankruptcy petition more than a year ago or to take discovery in this Adversary Proceeding once it was filed. In consequence, the Plaintiff had neither taken discovery nor was able to produce any evidence in support of its position. This situation was not changed by the Illinois Supreme Court order allowing the Plaintiff to proceed

7

with its tort claim, especially since that decision spoke to the timeliness of the Plaintiff's tort claim, not to its merits. Accordingly, the earlier Opinion here held that Defendant's Motion for Summary Judgment was timely filed under Rule 56(b).

Local Bankruptcy Rules 7056-1 and 7056-2 set forth procedures required to be followed in a Summary Judgment Proceeding. Rule 7056-1 requires the moving party to supplement his motion and supporting memorandum with a statement of undisputed material facts (the "7056-1 Statement"). L.R. 7056-1(A). The 7056-1 Statement must consist of short, numbered paragraphs and include within each paragraph specific citations to evidentiary material in support of the facts in that paragraph. The party opposing a motion for summary judgment is required by Local Rule 7056-2 to submit a response (the "7056-2 Response") to each numbered paragraph in the movant's 7056-1 Statement and include, "in the case of any disagreement," specific citations to supporting evidence. L.R. 7056-2(A)(2)(a). All facts not outright denied, as well as denials that are not supported in required form support, are admitted. L.R. 7056-2(B), *marchFirst*, 2010 WL 4027723.

During the summary judgment proceeding, the Plaintiff did not present any deposition, affidavit, or other matter evidence that contradicted the material presented by Defendant. In the Defendant's Statement under Local Bankruptcy Rule 7056-1, he set out in numbered paragraphs the undisputed facts of the case. Every factual statement was supported with specific references to supporting evidentiary material, and as a result was compliant with the Local Bankruptcy Rules. (See Def. L.R. 7056-1 Statement). The Plaintiff's 7056-2 Response responded to the Defendant's Statement by purporting to offer additional facts, clarifying or explaining its response, or denying some of the facts presented. However, Plaintiff did not support any of those responses with supporting material as required. (See. Pl. L.R. 7056-2 Resp.) As a result,

the facts as presented by the Defendant were deemed admitted . *See* L.R. 7056(b)(1), (2); *see also Jacobs*, 448 B.R. at 463. Plaintiff set forth no additional facts in the required manner so as to show contested any issue as required to deny summary judgment under Bankruptcy Rule 7056(A)(2)(b).

If a party Plaintiff possesses evidence to support its suit, it need only present such evidence to oppose summary judgment by showing a relevant fact issue that supports its legal theories. That was not done earlier. As discussed below, that has not been ever attempted by the pending Motion to Vacate Summary Judgment

In its Adversary Complaint, Plaintiff invoked two of the statutory exceptions to discharge under section 523(a) of the Bankruptcy Code. As the party seeking an exception to the discharge of a debt, the Plaintiff bore the burden of proof by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, (1991); *Jacobs*, 448 B.R. at 470. Exceptions to discharge must be construed strictly against the Plaintiff and liberally in favor of the Defendant. *See In re Morris*, 223 F.3d 548, 552 (7th Cir.2000).

## 11 U.S.C. §523(a)(4)

§523(a)(4) of the Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). To demonstrate a claim under section 523(a)(4), the Plaintiff must prove that the Defendant committed: (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. 11 U.S.C. § 523(a)(4). The Plaintiff invoked only the fraud or defalcation prong of that statutory exception.

In the Memorandum Opinion allowing Summary Judgment, the following legal reasoning was used to determine the proper outcome for these allegations. In order to prevail under the

9

fraud or defalcation prong, the Plaintiff needed to establish the following elements by preponderance of the evidence: (1) an express trust or fiduciary relationship that existed between the Plaintiff and the Defendant; and (2) fraud or defalcation committed by the Defendant in the course of that relationship. *See Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 765–66 (7th Cir.2011).

Under Seventh Circuit authority, a fiduciary relationship for purposes of section 523(a)(4) may arise either when there is an express trust or when there is "a difference in knowledge or power between fiduciary and principal which ... gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994); Jacobs, 448 B.R. at 477. Only those fiduciary relationships that " 'impose[ ] real duties in advance of the breach' " fall within the ambit of section 523(a)(4). *In re Frain*, 230 F.3d 1014, 1017 (7th Cir.2000) (quoting *Marchiando*, 13 F.3d at 1116; *Hanson*, 432 B.R. at 774 (same)); see also *Berman*,629 F.3d at 769.

"Fraud" for purposes of the statutory exception requires intentional deceit. *In re Fairgrieves*, 426 B.R. at 754."Defalcation" means "the misappropriation of funds held in trust for another in any fiduciary capacity, and the failure to properly account for such funds." Id. Although intent to misappropriate is not necessary, defalcation requires at least reckless conduct. *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir.1994).

Count I of the Amended Complaint asserted that an alleged debt should be excepted from discharge under the fraud or defalcation prong of section 523(a)(4) because, as the executor of the 1999 Will, the Defendant breached his fiduciary duty to the Plaintiff. Specifically the Plaintiff contended that the Defendant and Plaintiff had a fiduciary relationship because the Plaintiff was the "rightful heir and sole intended beneficiary of Ellis" (Compl. ¶¶ 21–24) and that

10

the Defendant breached his fiduciary duty to the Plaintiff by failing to notify the Plaintiff of Ellis' death and by distributing all of the assets of Ellis' estate to himself.

The earlier Opinion held that the alleged facts did not support the Plaintiff's contentions. There was no evidence of a fiduciary relationship between the Plaintiff and the Defendant. The Defendant may have been the fiduciary of Ellis under her power of attorney, and of the heirs at law as the executor of her will. However, since the Plaintiff was not an heir under the 1999 will, the Defendant had no fiduciary duty to the Plaintiff. Furthermore, the Plaintiff presented no evidence that the Defendant committed fraud or defalcation. There was no evidence the Defendant failed to meet his obligations as his role as power of attorney or executor of the 1999 will, nor any evidence that he intentionally deceived anyone or misappropriated the funds of Ellis' estate.

The Plaintiff suggested that the Defendant took advantage of Ellis, exercising some form of undue influence over her so that she would leave all of her assets to him. Under Illinois law, "undue influence" is "any improper ... urgency of persuasion whereby the will of a person is over-powered and he is induced to do or forbear an act which he would not do or would do if left to act freely." *In re Estate of Hoover*, 155 Ill.2d 402, 185 Ill.Dec. 866, 615 N.E.2d 736, 740 (1993) (internal quotations omitted). "To constitute undue influence, the influence must be of such a nature as to destroy the testator's freedom concerning the disposition of his estate and render his will that of another." *Id.* (internal quotations omitted).

All of the evidence presented by the Defendant and uncontested by the Plaintiff contradicted the Plaintiff's assertion that the Defendant persuaded or overpowered Ellis or destroyed her freedom concerning the disposition of her estate in any way. Rather, the

uncontested facts demonstrated that, despite Ellis' advanced age, she did exactly what she wanted to do with her property, without being influenced by the Defendant or anyone else.

Based on the forgoing legal standards and uncontested facts in the Defendant's 7056–1 Statement, based on testimony of the deponents, and the lack of any evidence whatsoever to suggest otherwise, it could not be found that the Defendant unduly influenced Ellis to leave all of her assets to him or that he committed fraud or defalcation in connection with the relevant events in this case. As a result of there being no triable issue of fact on that question, it was held and still appears that the Plaintiff could not bar dischargeability of its claim under § 523(a)(4).

<u>11 U.S.C. §523(a)(6)</u>

The Plaintiff also attempted to bar dischargability under Section 523(a)(6), which provides that a debtor cannot discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). The Memorandum Opinion discussed this standard, and held that to prevail on a claim under the statutory exception, the Plaintiff must demonstrate that the Defendant: (1) caused an injury; (2) acted willfully; and (3) acted maliciously. *See Gen. Med., P.C. v. Monke (In re Monke)*, No. 10–CV–2273, 2011 WL 1790403, at (C.D.Ill. May 10, 2011); *Jacobs*, 448 B.R. at 480; *Fairgrieves*, 426 B.R. at 756; *Koplin v. Ginsberg (In re Ginsberg)*, Nos. 08 B 30836, 09 A 188, 2009 WL 4891815, at (Bankr. N.D. Ill., 2009).

That Opinion noted that the United States Supreme Court has explained that "[t]he word 'willful' in [section 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 140 L.Ed.2d 90 (1998). Under this exacting standard, the Plaintiff needed to show facts demonstrating that Defendant's actions were harmful

and the Defendant intended the harmful consequences of his actions. See *Geiger,* 523 U.S. at 61–62; see also *Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir.2004). Injuries that are recklessly or negligently inflicted do not fall within the scope of §523(a)(6). *Geiger*, 523 U.S. at 64.

The United States Supreme Court has not described what evidence of state of mind is needed to establish the intent to cause injury for purposes of the statutory exception under §523(a)(6). *Jacobs*, 448 B.R. at 480; *Fairgrieves*, 426 B.R. at 757; *Basel–Johnson*, 366 B.R. 831 at 849 (Bankr. N.D. Ill.; *In re Scarpello*, 272 B.R. 691 at 704 (Bankr. N.D. Ill. 2002). However, lower court decisions have generally found that a plaintiff can show the requisite intent by establishing that the defendant either subjectively intended to injure the plaintiff or knew that the injury was substantially certain to result from his actions. *Jacobs*, 448 B.R. at 480–81.

As to the malice element required under section 523(a)(6), conduct is "malicious" if it is undertaken "in conscious disregard of one's duties or without just cause or excuse." *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994)(internal quotation omitted); *Fairgrieves*, 426 B.R. at 757; *Basel–Johnson*, 366 B.R. at 850. Therefore, to demonstrate malice under section 523(a)(6), the Plaintiff had to prove that the Defendant (1) intentionally committed a wrongful act, which (2) caused injury to the Plaintiff, and (3) was done without just cause or excuse. *See Basel–Johnson*, 366 B.R. at 850. In order for this Defendant's conduct to be considered malicious, he need not have acted with ill will or a specific intent to injure the Plaintiff. *See Jacobs*, 448 B.R. at 481; *Basel–Johnson*, 366 B.R. at 850.

Count II of the Amended Complaint alleged that by "causing" Ellis to transfer property to him and to execute a new will, the Defendant willfully and maliciously interfered with the Plaintiff's expectancy of inheritance under the 1964 Will. (Id. ¶¶ 27, 28.) According to the

13

Plaintiff, but for the Defendant's "actions in causing Ellis to execute a new will and transfer property to the Defendant prior to her death," the Plaintiff would have inherited estate assets valued at more than $2 million and the property that was transferred to the Defendant valued at over $1 million. (Id. ¶ 29.)

It was found in the earlier Opinion that the undisputed facts failed to support those contentions or to demonstrate any of the elements required to except the debt from discharge under section 523(a)(6). First, there is no evidence that the Defendant committed any acts—or did anything at all—to "cause" Ellis to transfer her property or execute a new will. Rather, as discussed above at length, the uncontested facts establish that Ellis was of sound mind and memory until her death in 2003 and that she disposed of her property exactly the way she wanted to, without being influenced, unduly or otherwise, by the Defendant. Other than baldly stating that the Defendant "caused" Ellis to transfer assets to the Defendant and execute a new will, the Plaintiff has simply offered no evidence to prove that the Defendant acted in any way to cause an injury to the Plaintiff.

Even if the Plaintiff had identified specific acts committed by the Defendant which resulted in injury to the Plaintiff, there has been nothing offered to show that the Defendant actually intended to harm the Plaintiff, knew that injury was substantially certain to result from his conduct, or intentionally committed a wrongful act without just cause or excuse. Because the Plaintiff failed to make any showing at all on any of the elements of its claim under section 523(a)(6), summary judgment was entered for the Defendant on Count II. That Judgment was properly entered.

The Plaintiff filed its Motion to Vacate on January 6, 2012.

### III. LEGAL AND PROCEDURAL STANDARDS

The Plaintiff was not specific as to which part of Rule 59 it is relying on. The two parts most commonly applied in this situations are Rule 59(a), (allowing the judge to grant a new trial), or 59(e), (allowing the judge to alter or amend judgment). Since there was no trial in this case, only a summary judgment proceeding, it is inappropriate to consider the motion under Rule 59(a). See *Schmude v. Sheahan*, 00 C 4580, 2004 WL 887387 (N.D. Ill. Apr. 23, 2004).*Patin v. Allied Signal, Inc.*, 77 F.3d 782, 785 n. 1 (5th Cir.1996). Therefore, the Motion will be assessed under the standards of Rule 59(e).

**Motion to Alter or Amend Judgment Under Rule 59(e)**

A Rule 59(e) Motion to alter or amend the judgment may be granted, "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (quoting *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)). "The rule essentially enables a ... court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995). The decision to grant or deny a Rule 59(e) motion is within the court's discretion. *Prince Id*, 85 F.3d at 324.

A Rule 59(e) motion cannot be used to present matters that were available to the movant before the proceeding and should have been presented prior to the entry of final judgment. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 867 (7th Cir.1996). "Where a party is made aware that a particular issue will be relevant to its case but fails to produce readily available evidence pertaining to that issue, the party may not introduce the evidence to support a Rule 59(e) motion." *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 202 n. 5 (7th Cir.1994).

15

Rule 59(e) permits a party to bring to the attention of the judge "factual and legal errors that would have changed the outcome of the case." *Herbstein v. Bruetman (In re Bruetman)*, 259 B.R. 672, 673–74 (Bankr.N.D.Ill.), aff'd, 266 B.R. 676 (N.D.Ill.2001), aff'd, 32 Fed. Appx. 158 (7th Cir.2002). A manifest error of law is demonstrated if there is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro Life Ins. Co.* 224 F.3d 601, 606 (7th Cir. 2000).

In a motion for summary judgment, once the moving party has met its initial burden, the opposing party must respond with specific facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 248. Only a showing that the opposing party has admissible evidence may be considered in assessing the summary judgment motion. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

As discussed above, Local Bankruptcy Rule 7056-1 requires the moving party to "serve and file a supporting memorandum of law and a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to judgment as a matter of law, and that also includes: (1) a description of the parties; (2) all facts supporting venue and jurisdiction in this court; and (3) any affidavits and other materials referred to in Fed. R. Civ. P. 56(e)." See Local Bankr. R. 7056-1. The non-moving party under Local Bankruptcy Rule 7056-2 is required to submit a similar memorandum of law, as well as a response to the moving party's statement of facts. In the case of any disagreement with the moving party's statement of facts, the non-moving party must respond with "specific references to the affidavits, parts of the record, and other supporting materials relied upon," as well as a statement that lists any additional facts that would support the denial of summary judgment, which must also

16

include references to affidavits, parts of the record, or other supporting material relied upon. See Local Bankr. R. 7056-2.

## IV. DISCUSSION OF MOTION

In the Plaintiff's Motion, there is presented nothing that shows that a manifest error of law or fact were made. The Plaintiff did not point to a legal precedent or other controlling authority that contradicts the Opinion. Nor did it even discuss the legal issues with both Counts that alone sink its case here. Nor did it point to any error in fact that affected the Opinion. Therefore, the Plaintiff can only succeed in its motion if it has presented newly discovered evidence not available before the summary judgment was executed.

As noted above, during the Summary Judgment Proceeding, the Plaintiff presented no affidavits or other material in its Rule 7056-2 Response that refuted the facts as presented by the Defendant. Furthermore, the Plaintiff did not provide any evidence supporting any contention that additional facts should be considered. Plaintiff presented absolutely nothing to support its assertions that the Defendant had a fiduciary relationship with the Plaintiff, let alone that the Defendant committed any fraud or defalcation. Furthermore, no evidence was presented to demonstrate there were any acts committed by the Defendant that resulted in injury to the Plaintiff, let alone any evidence that the Defendant had an intent to harm. On the other hand, the Defendant earlier presented an impressive showing by affidavits to support all of the factual findings in his Rule 7056-1 Statement.

In its Motion to Vacate, the Plaintiff attached two matters that it relies on to demonstrate a genuine issue of material fact that should block judgment. The first is an affidavit by one of the Plaintiff's lawyers, Wayne Lofthouse, and the second is a copy of a purported medical record of Ms. Ellis assertedly kept by her doctor. The Plaintiff states that these materials create a

genuine issue of material fact by contradicting the conclusion made in the earlier Opinion that Ms. Ellis was of sound mind when she drafted her will in 1999.

**Mr. Lofthouse's Affidavit**

In his affidavit, Mr. Lofthouse reports on an interview he had with a Ms. Bonifiglia, a caretaker of Ms. Ellis. While the information contained in the affidavit might be potentially pertinent to the case, it only reports a hearsay conversation, not personal knowledge by the affiant Mr. Lofthouse. Assuming that the contents would be sufficient in order to block summary judgment, the Plaintiff would have needed to present an affidavit by Ms. Bonifiglia herself in opposition to Defendant's Motion for Summary Judgment. In support of its Motion to Vacate Summary Judgment, the Plaintiff states that Ms. Bonifiglia is prepared to testify, yet the Plaintiff does not have her affidavit demonstrating what she would be testifying to. A summary judgment decision must be based on the showing that admissible evidence is available, not the unsubstantiated assertions of the Plaintiff's lawyers. *See Gunville, Id,* 583 F.3d at 985 (7th Cir. 2009).

Even if Lofthouse's affidavit met the standards required during a summary judgment proceeding, the interview Mr. Lofthouse reported in his affidavit took place in May of 2007. This means that the information conveyed in the affidavit is not newly discovered, and the Plaintiff has not provided any reason that it should be considered newly discovered. If the information from Ms. Bonifiglia's would have been relevant to the case, Plaintiff has no excuse for not presenting this evidence both properly and timely during the earlier Summary Judgment proceedings. *See Prince Id.,* 85 F.3d at 324.

In its Motion, Plaintiff argues that the Defendant did not depose the Plaintiff's witnesses, and seemed to imply this somehow prevented the Plaintiff from presenting its evidence. This is

ludicrous. The Defendant was not required to depose the Plaintiff's witness. In a summary judgment proceeding, no one is required to depose a witness. An affidavit, as long as it presents facts known by the affiant that would be admissible in court, is sufficient. *See Celotex*, 477 U.S. at 324. All that is required is a demonstration that the party opposing summary judgment has admissible evidence that contradicts evidence presented by the Defendant. The Plaintiff could have presented affidavits from witnesses such as Ms. Bonifiglia in opposing the motion for summary judgment, if indeed they were willing to testify as Plaintiff contends, and if they were not willing, Plaintiff could have obtained their testimony by deposition.

**The Purported Medical Records**

The second piece of material presented in the Plaintiff's motion is a purported record of the medical file of Grace Ellis kept by Dr. Wehrmacher, her physician. Again, the information contained in these purported medical records might have been pertinent to the case. However, the purported medical record is not authenticated.

Rule 56(e) Fed. R. Civ. P. requires all documents that might be used to oppose summary judgment, including medical records, to be authenticated with an affidavit. *Wells v. Franzen*, 777 F.2d 1258, 1262 (7th Cir. 1985). The purported medical records put forward by the Plaintiff have not been authenticated, and therefore are also useless in a summary judgment proceeding. Furthermore, as with the affidavit, the purported medical record is said to be from records prepared in the year 1999, and Plaintiff has not shown that it was newly discovered, Therefore it was available to the Plaintiff during the summary judgment proceedings before Judgment was entered. The Plaintiff was well aware that this might be a relevant document, not only because it involved Ms. Ellis' state of mind, but also because Dr. Wehrmacher was a witness by affidavit for the Defendant. But it was not timely tendered earlier and now is not authenticated.

19

Therefore, the medical record is neither authenticated nor newly discovered evidence as required under Rule 59(e), and does not support Plaintiff's Motion.

## CONCLUSION

A motion to vacate Summary Judgment under Rule 59(e) is an opportunity for a judge to correct previous errors. It is not an opportunity for the movant to correct its own errors by relitigating the case or presenting materials held back by it before judgment was entered. That is exactly what the Plaintiff is attempting to do with its Motion to Vacate. Merely repeating its earlier arguments and bringing forward materials that were available at the time of trial, as the Plaintiff did here, is not within the purpose of Rule 59.

Providing a hearsay affidavit and an unauthenticated exhibit is also insufficient. Materials presented must show that admissible evidence is available. Plaintiff has not even now offered any showing that it has any admissible evidence, and certainly no showing of newly discovered admissible evidence. It has shown no error of law or fact manifest or otherwise in the summary judgment proceeding.

The Motion to Vacate Judgment is therefore denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of February, 2012.